CLIFFORD C. ENZIAN, *et ux.,* and J. J. BLALOCK, v. STATE ROAD DEPARTMENT

165 So. 695.

Division A.

Opinion Filed February 13, 1936.

W. E. *Smith,* for Plaintiff in Error;

C. O. *Wright, Arthur A. Simpson, H. M. Hampton,* and *Pleus, Williams, & Pleus,* for Defendant in Error.

BROWN, J.—The State Road Department filed a petition in the Circuit Court for Marion County, Florida, to condemn certain lands for the purpose of constructing a section of a State road thereon under the Statutes of Florida. The petition states that in pursuance of Section 1657 C. G. L., the State Road Department in its judgment found it to be practicable and to the best interests of the State to locate and designate the route of State Road Number 31 (which was designated by the Legislature) and especially that section thereof in Marion County; and that therefore it did locate that section of said Road No. 31 located in Marion County and filed with the clerk of the Circuit Court for Marion County, a map or plat of said definite location, duly certified by the chairman and secretary of the State Road Department. The petition further states that it is necessary to condemn a right-of-way over and across certain lands in the construction of that portion of said road No. 31 so located in Marion County as aforesaid; that it is the in-

tention of the petitioner in good faith to locate and construct said road over, upon and across the lands aforesaid.

The description of the land to be condemned given to the State Road Department by its engineers and made a part of its resolution definitely locating and adopting the present mapped and platted route of Road No. 31, in Marion County stated that the land sought to be condemned is "West of the right-of-way of State Road No. 31." The resolution and map or plat provides for route No. 31 to join State Road No. 2 some 922 feet north of the city limits of Ocala and thereupon enter the said city over and upon the right-of-way of said State Road No. 2. The above mentioned resolution of the State Road Department which was duly passed and adopted by said department was attached to and made a part of the petition.

The defendants' demurrer to the plaintiff's petition was overruled by the trial court and the defendants entered pleas stating that the State Road Department furnished the engineers and supervised the construction of that part of State Road No. 31 in Marion County and that State Road No. 31 was at the time of the adoption of Section 1657 C. G. L., an existing public highway and county road and extended over the route designed by the Legislature; that afterwards, in 1927, the State Road Department took over the said right-of-way so constructed by Marion County and gave it the State Number of "31" and that ever since that time the said road has been maintained by the plaintiff as a section of State Road No. 31 and that the lands described are no part of the right-of-way so taken over and designed by the State of Florida as State Road No. 31 and that the plaintiff is without the power to relocate said right-of-way or condemn the lands described in said petition. They further contend that the present survey of

State Road No. 31 does not comply with the Statute inasmuch as it does not enter the city limits of Ocala, but joins State Road No. 2 some 922 feet north of the city limits, and that it is the intent of the Legislature that two separate and distinct State roads should enter Ocala.

The plaintiff's demurrer to such pleas was sustained by the trial court and the defendants sued out a writ of error to final judgment.

In June, 1923, by Chapter 9312, Laws of Florida, 1923, the State Road Department was given the power of eminent domain and the duty of maintaining the State roads. Section 7 of said Act (1654 C. G. L.) provides as follows:

"The term 'State Road' * * * is defined and shall be construed to mean such road or part of road which has been or may be established, declared and designated by the State Road Department or the Legislature as a State Road and the location of the line and right-of-way of which has been surveyed and fixed upon by the department or its duly authorized engineers and representatives."

"The term 'department' is defined and shall be construed to mean the State Road Department of Florida."

Chapter 9311, Acts of 1923, states:

"Section 1. That the following named and numbered roads be and are hereby declared, designated and established as State roads." * * *

"Road No. 31. Road from Ocala to Waldo, via Citra, Island Grove and Hawthorne." * * *

"Section 2. That the above named and numbered roads shall be and constitute the system of State Roads of this State, and when located and constructed by the State Road Department shall become and be the property of the State."

"Section 3. That the State Road Department is hereby vested with authority to determine and fix the lines and

location of such roads between the cities and places thereon named in Section 1 of this Act, all the laws and parts of laws applying to and affecting State roads, designated and established by the State Road Department, shall apply to and affect the roads herein named and established as State roads, and the State Road Department shall have the power and authority with respect to the roads herein named and declared as it had at the time of the passage of this Act, with respect to State roads designated and established by said department. Provided, that said department shall not hereafter have the power to designate and establish State roads."

"Section 4. All laws and parts of laws in conflict herewith be, and the same are hereby repealed."

"Section 5. This Act shall take effect immediately upon its becoming a law."

"Approved June 8, 1923."

Chapter 10269, Acts of 1925:

"Section 1. That Section 1 of Chapter 9311, Laws of Florida, approved June 8, 1923, entitled 'An Act declaring, designating and establishing a system of State roads, providing for the location thereof, and providing that such roads when located and constructed shall become and be the property of the State,' be, and the same is hereby amended to read as follows:

"* * * Road No. 31. Road from Ocala to Waldo, via Citra, Island Grove and Hawthorne" * * *

"Provided, further, that nothing in this Act shall prohibit or interfere with the State furnishing the engineers and constructing or supervising the construction of any part of said system of State roads at any time, and in any case where the county or counties or any road and bridge district runs and extends, provides all the necessary money, labor

and means, including the engineering costs, necessary for the construction thereof."

"Provided, further, that the State Road Department shall be and is hereby authorized and empowered to survey and locate the line or route of any State road or section of any State road. herein numbered and designated, whenever in the judgment of said department the doing of such work shall be found to be practicable and to the best interests of the State. Whenever such survey and location shall be made and adopted by the said department, a map or plat of such survey and location, certified by the secretary and chairman of the department shall be filed in the clerk's office of said county, through which said State road or section ·thereof, so surveyed and located shall run."

· The above quoted Statutes are compiled in Section 1657 C. G. L., 1927.

A number of interesting questions have been argued here, but the crux of the controversy is: Did the State Road Department ever locate and establish the road contended for by the plaintiffs in error as route No. 31?

This Court is of the opinion that the State Road Department took over the maintenance of and gave the number of "31" to the Marion County road in question as a temporary measure to ease and expedite traffic until such time as they could officially survey, locate and permanently adopt a route in accordance with the statute, and file a map or plat of such route in the county clerk's office of the county through which said State road or section thereof should run.

If these tentative locations of State roads and the expenditure of road money in partial maintenance thereof, constituted a permanent location, it would greatly hamper the State Road Department in its work, and prevent it from

rendering to the public the needed service contemplated by the statutes of keeping those roads which are already in existence marked and in serviceable condition, pending location and construction of the permanent roads in the State highway system.

In Smith v. State Highway Commission, 139 S. E. 606, 194 N. C. 333, the Court held, in a similar instance, that the road in question was merely a temporary road and that in directing signs which called said road as "No. 102," and the making of repairs on that road by the State Highway Commission was not a "taking over" in accordance with the statute. In State Highway v. Williams, 121 S. E. Reporter 55, 138 Va. 217, 1924, in like instance, the Court held that the surface treatment of the "pilot" road was mere maintenance, and the employment of a supervisor to look after repairs and the placing of signposts and placards were merely incidents of the temporary use of the road. The Court further states that:

"In the inauguration of the system all the roads constituting the State highway system had to be located and established, and this could not be done at once. It required time and necessitated delay. In the meantime there were hard-surface roads built by the counties which ran in the general direction of the State highway system. * * * The Highway Commissioner was not ready or prepared to decide * * * where he would locate and establish the State highway. * * * In order to move the traffic over these roads (county roads) and protect the investment of the public therein the Highway Commissioner adopted the policy of including these roads temporarily in the State system for the purpose of maintaining them at the State expense, but with no purpose of adopting or establishing them as parts of the State highway system."

All the parties in the instant case agree that prior to the resolution of the State Road Department of June 11th, 1934, heretofore referred to, a copy of which was attached to and made a part of the petition, the State Road Department had not surveyed or located the line or route of State Road No. 31 in Marion County, Florida, nor filed a certified map or plat of such survey and location in the clerk's office of Marion County, Florida, nor had determined and fixed the lines and locations of said road No. 31, between the cities of Ocala and Waldo, via Citra, Island Grove and Hawthorne. The map or plat adopted by the State Road Department on June 11, 1934, and filed in the clerk's office of Marion County is the legally established route of State road No. 31.

The words, "West of the right-of-way of State road Number 31," "West right-of-way line of State road Number 31," and "West right-of-way line of said highway," contained in the description of the land sought to be condemned in the resolution do not add to, subtract from, or in any way affect that certain piece of property sought to be condemned. A definite piece of property is described without them, and it is the same piece of property as is described in the petition, in the jury's verdict, and in the final judgment, and therefore the above quoted words are mere surplusage and are of no effect in determining the right-of-way of State road No. 31 to be other than is contended by the State Road Department.

It is the opinion of this Court that while the right-of-way of State road No. 31 is shown to join that of State road No. 2 some 922 feet north of the city limits of Ocala, it retains its individual identity as State road No. 31 and does enter the city limits of Ocala pursuant to statute, although it be over the right-of-way of State road No. 2 which is

now a joint right-of-way of State road No. 31. Both roads use the same roadbed in entering the City of Ocala, causing a confluence of the streams of traffic along said roads for that distance as shown by the map or plat filed with the clerk of the Circuit Court for Marion County. Pruit v. King, 104 S. E. 191, 114 S. C. 525, 1920; Boothroyd v. Board of Commissioners, 43 Colo. 428, 97 Pac. 255, 1908, and citing 15 Am. and Eng. Enc. Law 357; Folson v. County Commissioners, 173 Mass. 48, 53 N. E. 155, 1899; Wells v. County Commissioners, 29 Me. 522, 11 Atlantic Reporter 417, 1887.

It is the opinion of this Court that the rulings of the Circuit Court were correct; that State Road No. 31, as located by the State Road Department, runs not from any point north of the City of Ocala, but from the City of Ocala to Waldo, via Citra, Island Grove and Hawthorne; that the fact that the same roadbed is used by State Road No. 2 as is used by State Road No. 31, for a short distance out of Ocala, does not vary this fact; that the property to be condemned is correctly described in the petition, the verdict and the judgment, and is identified as property lying in the right-of-way of State Road No. 31; that prior to the resolution of the State Road Department of June 11, 1934, locating the line or route of State Road No. 31, State Road No. 31 was not in actual existence, both designation and location being necessary to accomplish this. It is the further opinion of this Court that the property sought to be condemned is a part of the route of the right-of-way of State Road No. 31, as determined by the State Road Department, and that its condemnation is necessary for use as a part of said public highway. Judgment affirmed.

WHITFIELD, C. J., and DAVIS, J., concur.

Ellis, P. J., and Terrell and Buford, J. J., concur in the opinion and judgment.