IRA SIBLEY, *et al.*, v. VOLUSIA COUNTY, *et al.*

2 So. (2nd) 578
Special Division A
Opinion Filed May 23, 1941
Rehearing Denied June 10, 1941

*Chas. F. Wells* and *Hilburn & Merryday,* for Plaintiffs in Error;

*Hull, Landis, & Whitehair,* and *John L. Graham,* for Defendants in Error.

BUFORD, J.—Writ of error brings for review judgment in favor of the plaintiff in condemnation proceedings.

Plaintiff in error presents two questions for our determination stated as follows:

"First Question: Where a County undertakes to furnish to the State Road Department a right of way for a State Road, and files a petition in condemnation for such purpose, is it necessary that it be alleged in such petition that the right of way sought to be acquired is a necessary right of way for said State Road, and that the lands sought to be condemned are necessary lands for the purpose of securing such right of way for said State Road?

"Second Question: If it is not necessary for a County, in its petition for condemnation of lands for a right of way for a State Road, to allege that such right of way is a necessary right of way, and that the lands sought to be condemned are necessary lands for the purpose of securing such right of way for said State Road; then does an answer to such petition show legal cause why said lands should not be taken for the purposes set forth in the petition, by alleging the lack of necessity of the right of way sought to be

condemned, and the lack of necessity for the taking of respondents lands for such purpose?"

At the outset, we may say that plaintiff in error places much stress on Federal statutes relative to Federal aid by the Federal Government in the construction and maintenance of State Roads. We hold that such statutes have no effect upon the power of State agencies to establish roads but only come into play in connection with the contributions to be made by the Federal Government in money to aid in the construction and maintenance of the roads when and if they have been established.

We may also say that private interest in one route or another is not a matter to be considered as controlling in the determination of a location of a State highway.

The only practical difference between the contentions relied on in this case and those which were relied on in the case of Enzian v. State Road Department 122 Fla. 527, 165 Sou. 695 (involving Road No. 31) is that in this case plaintiff in error relies on Chapter 12383, Acts of 1927, as a definite limitation to the route at that time occupied as State Road No. 21 as the only route which the State Road Department could adopt. That Act provides:

"Section 1. That State Road No. 21 be redesignated as follows: Extend from Daytona Beach to DeLand as now established; thence from DeLand to Eustis via Crow's Bluff and Cassia.

"Section 2. State Road No. 100 is hereby designated as follows: Extending from State Road No. 21 at or near Crow's Bluff on the west side of the St. Johns River and extending westward via Altoona, intersecting State Road No. 38."

On research we find that by the provisions of Chapter 9311, Acts of 1923, certain roads by name and number were established and among these were "Road No. 21 extending from Daytona to DeLand" and also "Road No. 31, Road from Ocala to Waldo via Citra, Island Grove and Hawthorne."

The record shows that Road No. 21 had never been established in accordance with the provisions of Chapter 9312, Acts of 1923, Sec. 1654 C. G. L., and, therefore, the only establishment of Road No. 21 which the 1927 Act could have referred to was the establishment effectuated by Chapter 9311, *supra*. This statutory designation and establishment of such road did not confine the State Road Department to adopting the route then occupied by the existing road. Enzian v. State Road Department, *supra*.

Plaintiff in error also contends that the petition in condemnation does not sufficiently show necessity for the exercise of eminent domain or power in the petitioner to exercise such power in the instant case.

The petition shows that the State Road Department had pursued the course required by Chapter 9312 in designating and establishing that part of the route of State Road No. 21 known as Project 5055; had surveyed and located that route; had caused a right of way map of said location and survey to be made; had adopted the same and caused it to be filed in the office of the Clerk of the Circuit Court of Volusia County, Florida. It showed that by proper resolution the State Road Department had requested and authorized the Board of County Commissioners of Volusia County, Florida, to acquire by gift, purchase or condemnation the right of way shown by the said map and included in the said survey; that a certified copy

of the resolution had been presented by the State Road Department to the Board of County Commissioners and that at a meeting of the Board of County Commissioners held at DeLand, Florida, on September 24, 1940, by resolution the said Board of County Commissioners had agreed to acquire and furnish the said State Road Department the lands needed and required for the right of way of such road.

The petition further showed that the county commissioners pursuant to agreement to furnish to the said State Road Department the said lands needed for said right of way, had acquired by gift or purchase certain parts and parcels of said lands needed for such right of way, but that they had been unable to acquire all of the lands included in the plat and survey of such right of way and it, therefore, became necessary for petitioners to exercise their power of eminent domain to appropriate the necessary property for that county purpose including the purpose of securing the land for right of way for State roads to be constructed and maintained in Volusia County, Florida, and that because they had been unable to acquire by gift or purchase the lands involved in this suit the proceedings in condemnation were instituted. Several parcels of land were included and specifically described. The necessity for condemnation was sufficiently shown by the allegations of the petition.

As we have hereinbefore stated, other matters urged for the reversal of the judgment were in no material manner different from the matters urged by the appellant in the case of Enzian v. State Road Department, *supra.*

We do not feel that it is necessary to repeat the enunciations contained in the opinion in that case but

on authority of that opinion and judgment and in the light of what we have hereinbefore said, the judgment here should be affirmed and it is so ordered.

Affirmed.

BROWN, C. J., BUFORD and CHAPMAN, J. J., concur.

BROWN, C. J. (concurring).—The main question involved in this case has been discussed in the foregoing opinion. Counsel for plaintiff in error in their very well prepared brief take the position that there was no authority for a county to condemn lands for rights of way for State roads except Chapter 10118 of the Acts of 1925 as amended by Chapter 17363 of the Acts of 1935. Section 1 of Chapter 10118 vests the power of eminent domain in the State Road Department to condemn all necessary lands and property for the purpose of securing rights of way for State roads and all bridges in connection therewith. Section 2 of the Act was declared unconstitutional in the case of Spafford v. Brevard County, 92 Fla. 623, 110 So. 451, but the Court held that the remainder of the Chapter was not affected by eliminating said Section 2. Section 3 authorized the several counties of the State to furnish to the State Road Department the necessary rights of way for State roads in or through their respective counties, and to that end vested the counties with the power of eminent domain to condemn all necessary lands for the purpose of securing rights of way for State roads, such condemnation proceedings to be bought and maintained as prescribed in Section 1505, *et seq.,* of the Revised General Statutes of Florida. As amended by Chapter 17363, Section 3 of Chapter 10118 contained the provisions in the original section and added thereto a provision to the effect that the

various counties may enter into contract to furnish necessary rights of way to the State Road Department, and to make bond with sufficient sureties conditioned to indemnify the State Road Department against expenses incurred by the counties in securing such rights of way, etc.

Section 1505 and 1506 of the Revised General Statutes of Florida referred to in both of the above statutes as prescribing the procedure for such eminent domain proceedings, were specifically repealed by Chapter 14716 of the Acts of 1931. This repeal took effect after Chapter 10118 was adopted in 1925 but before Chapter 17363 was adopted in 1935.

This raises a rather peculiar situation, and the contention of counsel for plaintiff in error is that the effect was to leave as the only effective provision of law with reference to what a petition for condemnation should allege, which was in force at the time the petition in this case was filed, the provision contained Section 3276 of the Revised General Statutes of 1920, being Section 5084, Compiled General Laws of 1927, which provides that in all cases where the right to take property for public use without the consent of the owner has been heretofore or hereafter conferred by the Constitution, general law or special charter, upon any State, county or municipal authority, public body, officer, agent or commission, or upon any corporation, the petition for condemnation shall set forth:

"1. The authority under which the petitioner claims the right to take the property for public use.

"2. A description as accurate as may be of the property sought to be taken.

"3. The names of the occupants of the property,

and the names, places of residence, legal disabilities (if any) and the interest of all owners and mortgagees if the same by diligent search can be ascertained.

"4. The purpose of the taking, and that the property is necessary for that purpose.

"5. If the petitioner be a corporation seeking to obtain a right of way, that it has located its line and intends in good faith to construct the same over the property; and if the petitioner be a municipal corporation seeking to alter, extend and open a street, lane or avenue, that the said improvement has been ordered by the proper municipal authority. (Amended by Ch. 5017, Acts 1901, Sec. 11.)"

It will be observed from reading Section 1505 of the Revised General Statutes, Section 2283, Compiled General Laws, that it applies to the exercise of the power of eminent domain by counties and that the requirements as to the contents of the petition are rather meager as compared to the requirements of the section above quoted from, 5084 Compiled General Laws, which is a general statute governing the exercise of the power of eminent domain and which was derived from Chapter 5017 of the Acts of 1901. The process in either case, directed to the defendants named in the petition, must command them to be and appear before the circuit court on a day named, and to show what right, title or interest they have in and to said property, and to show cause why it should not be taken for the uses and purposes set forth in the petition. Section 1507 R. G. S.; Section 2285 C. G. L.; Section 3279 R. G. S.; Section 5087 C. G. L.

This Court had before it for construction Chapter 10118 in Spafford, et al., v. Brevard County, supra. We also treated the general subject of condemnation

in the case of Wilton v. St. Johns County, 98 Fla. 26, 123 So. 27, 65 A. L. R. 488. In these cases this Court pointed out the constitutional provisions which must be kept in mind and given full force and effect in condemnation proceedings. Without repeating what was said in those opinions, we think it might be regarded as well settled that applying constitutional principles, in a general way, a petition for condemnation should contain allegations which comply at least with the first four requirements of Section 5084 C. G. L. It therefore matters little to us whether Chapter 10118 of 1925 and Chapter 17363 of 1935, in so far as they attempt to require the petition to contain the allegations set forth in Section 1505 R. G. S (Section 2283 C. G. L.) are valid or not. Due process of law and the constitutional provisions referred to in the above cited opinions require that the petitioner must show his right to take property for a public use, the purpose of the taking, and that the property is necessary for that purpose.

The question of public use *vel non* is ultimately a judicial question. The use must be for the benefit of the public. It must be a public use. However, this Court, and practically all the other courts, hold that a public road is a public use. Where the Legislature delegates the powers of eminent domain to an administrative agency of government, or to a quasi public corporation, it may also delegate the power to determine the necessity for making the particular improvement for such public purpose, and generally such determination will not be disturbed by the courts in the absence of fraud or gross abuse of discretion. The rule usually applies also to the route or location of the proposed improvement. It is also held in the Wilton

case that where the law says that private property may be taken for public use, only when it is necessary for such use, this word "necessity" should be construed to mean a reasonable and not an absolute necessity. The question of whether any necessity exists for taking particular property for the purpose alleged in the petition is ultimately a judicial question upon which the owner is entitled to be heard. Headnotes 22 to 25 in the case of Wilton v. St. Johns County, *supra,* read as follows:

"22. Grantee of power to determine necessity for exercise of power of eminent domain is vested with considerable discretionary power in determining what property and how much is necessary, and such determination will not be interfered with by courts if it is made in good faith and is not capricious or wantonly injurious or in some respect beyond privilege accorded by statute.

"23. Landowner cannot object to taking of his property under power of eminent domain merely because some other location might have been made or some other property obtained which would have been suitable for purpose.

"23. To warrant denial of application for condemnation of property, it should appear that what is sought is clearly an abuse of power on part of petitioner.

"25. Generally, unless corporation exercising power of eminent domain acts in bad faith or is guilty of oppression, its discretion in selection of land will not be interfered with."

In view of what is said in the above opinion of Mr. Justice BUFORD and the pronouncements of this Court

in the case of Morrison v. Farnell, 126 Fla. 385, 171 So. 528, and Enzian v. State Road Department, 122 Fla. 528, 165 So. 695, we are of the opinion that the facts alleged in the answer of plaintiff in error to the petition for condemnation, as well as the facts alleged in the amended answer which was tendered, were not sufficient to show that the right of way in question was not necessary, or that there was no public necessity for the taking of the property of plaintiff in error for such right of way.

The judgment allowed plaintiff in error and the other defendants in the condemnation proceedings compensation for the lands sought to be taken, as fixed by the jury, and the reasonableness or fairness of the amount of such compensation is not questioned on this appeal.

I therefore concur in the judgment of affirmance.

WHITFIELD, BUFORD, and CHAPMAN, J. J., concur.