**ORANGE COUNTY, a Political Subdivision of the State of Florida, v. GAYLE DAVIS FORDHAM, et al.**

34 So. (2nd) 438        January Term, 1948
March 5, 1948        Division A
Rehearing denied April 8, 1948

260

*Fishback, Smith & Williams, Calvin Johnson* and *R. W. Ervin, Jr.,* for appellant.

*H. M. Voorhis, Maguire, Voorhis & Wells,* for Gayle Davis Fordham, *Claude L. Gray* and *Dorothea M. Watson,* for Howard B. Lovell and Hedwig S. Lovell, his wife, Charlotte B. Mayer, Antonio Endilcata and Frances Endilcata, his wife, *Robert J. Pleus* and *Warren H. Edwards* for Joseph R. Fiorita and Helen M. Fiorita, his wife, and Frances M. Baker and John R. Baker, her husband, *Alex Akerman, Jr.,* for The First National Bank, Executor of Estate of Charlotte B. Mayer, deceased, appellees.

CHAPMAN, J.:

Chapter 9311, Acts of 1923, Laws of Florida, designated and established State Road No. 22 extending from Orlando to Indian River City, via Ft. Christmas; also from Orlando to Crystal River via Winter Garden, Clermont, Mascotte, Groveland, Bushnell and Inverness. The Act provided further that Road 22, with many other named and numbered Roads, shall constitute the system of State Roads of Florida, and when located and constructed by the State Road Department shall become the property of the State of Florida. Section 7 of Chapter 9313, Acts of 1913, Laws of Florida, defines a State Road as a road or part of road which has been established or designated by the State Road Department or the Legislature as a State Road and the location thereof duly authorized. State Road No. 22 has recently been renumbered as State Road No. 50.

The State Road Department of Florida on May 16, 1946, by appropriate resolution, functioning in behalf of the public interest, approved a location and survey of a part of State Road No. 22 situated in Orange County extending from Minerville 8.658 miles to junction with Road No. 2 in the City of Orlando. A map of such location and survey supra was duly certified by the officials of the State Road Department and filed in the office of the Clerk of the Circuit Court of Orange County, Florida. The resolution, in part, recited "that it is the judgment of the department that the construction of said portion of said section is necessary, practical and to the best interest of the State and that it is necessary that the right of way for the road bed, ditches and borrow pits for said portion of said section be acquired."

The State Road Department authorized and requested the County of Orange, at its own expense, to secure by gift, purchase or condemnation the lands necessary for the right of way for the road bed for said portion of said section consisting of 8.659 miles and identified in the record as Section 7505. The Board of County Commissioners of Orange County, on June 6, 1946, pursuant to the request of the State Road Department, by a resolution acceded to said request and undertook to acquire at the expense of Orange County the road bed for the construction of the 8.658 miles of State Road situated in Orange County, although a part or portion of the road bed was situated in the City of Orlando. The resolution of the Commissioners authorized its acquirement by gift, purchase or by condemnation proceedings in the name of Orange County, Florida.

The Board of County Commissioners of Orange County, pursuant to its previous adopted resolution and in accordance with its agreement with the State Road Department, caused to be filed in the Circuit Court of Orange County its petition in condemnation for the purpose of acquiring title to described lands situated within the City of Orlando to be used as a part of State Road No. 22, identified in the record as a part of Section 7505. The described lands are situated along Colonial Drive, a street running east and west through the City of Orlando. The described lands were necessary for

rights of way and easements for State Road No. 22 through the City of Orlando along Colonial Drive as located by the State Road Department in behalf of the public interest and was so declared by the resolution adopted by the State Road Department of Florida and the Board of County Commissioners of Orange County prior to the institution of the suit. The trial court dismissed the petition in condemnation, thereby holding that Orange County was not authorized, as a matter of law, to maintain the condemnation suit seeking to acquire the described lands for road purposes situated in the City of Orlando, but entered judgments for attorneys' fees against the petitioners in behalf of each defendant, and the plaintiff below appealed.

The separate answers of the defendants to the petition in condemnation as presented by the Honorable Claude L. Gray are identical except as to the description of the lands sought to be condemned. Paragraph 2 of the answers denies the allegation of the petition in condemnation to the effect that the acquisition of the described property by the County of Orange in behalf of the State Road Department of Florida for the improvement of State Road No. 22 along Colonial Drive in the City of Orlando was in the public interest or for the best interest of the people of Florida.

Paragraph 3 of the answers sets out that the described property is situated with the city limits of the City of Orlando and does not abut any street which has been designated by lawful authority as a connecting link for the proposed highway. State Road No. 22 through the City of Orlando has heretofore been designated and the route established and as designated has by the State Road Department been maintained for a period of four years, and more, prior to the institution of the present suit. The State Road Department having once exercised the power and authority conferred by statute in the location and designation of State Road No. 22 as it passes through the city limits of Orlando has exhausted its power and authority conferred by statute and for this reason the plaintiff and the State Road Department of Florida do not now have any lawful power or authority to alter, change or interfere with the previous designation of Road

No. 22 as it now passes along the streets of the City of Orlando.

Paragraph 4 of the answers sets out that the proposed change in the connecting link of State Road No. 22—along Colonial Drive through the city of Orlando—has not been lawfully designated by competent authority. The State Road Department is without statutory authority to designate Colonial Drive as a connecting link through the City of Orlando and said city has not adopted an ordinance or resolution approving the proposed connecting link, and therefore the County of Orange cannot maintain the case at bar. The County of Orange is without power to expend public funds, property of the taxpayers of Orange County, to pay for the property sought to be condemned. It affirmatively appears that the case at bar was not brought in good faith. The expenditure of the taxpayers' money for the described property is not a county purpose for which public funds can be lawfully expended. The City of Orlando is the only party in law authorized to maintain the condemnation suit for the acquisition of the lands for the improvement of State Road No. 22 through the city of Orlando.

Paragraph 5 of the answers sets out that the defendants, as a matter of law, are entitled to have the real party in interest maintain the case at bar for the reason that they are entitled to a judgment against the petitioners for the value of their property and the present proceeding is wholly invalid to condemn the property situated within the City of Orlando and described in the answer, even though a valid enforceable agreement now exists between the County of Orange and the City of Orlando providing for the funds with which to pay for the described property. The trial court sustained paragraphs 2, 3, 4 and 5 of the answers supra against motions to strike and demurrer.

Presented here is the quaere: May Orange County, at the request of the State Road Department of Florida to furnish it a right of way for widening and reconstruction of a city street as a part of its highway system and as a connecting link of State Road No. 22 (renumbered No. 50), maintain a

suit for condemnation of such right of way inside the incorporated limits of the City of Orlando?

The question posed may be considered under two divisions viz: First, the power of a county to maintain a suit in condemnation to acquire lands for right of ways for the use of a State Road; and, second, if such power exists, may lands situated within the limits of a city necessary for a State Road be acquired by a proceeding in condemnation? The power of a municipality to maintain a condemnation suit to acquire land to be used as a right of way for a State Road or Highway in behalf of the State Road Department of Florida was upheld by this Court in Meyer v. City of Daytona Beach, 158 Fla. 859, 30 So. (2nd) 354.

It is generally conceded that a Legislature in delegating the powers of eminent domain must limit or restrain the taking of property for a public use as distinguished from a strictly private use and the courts usually apply a strict construction to such statutes. If the power of Orange County to maintain the suit at bar exists, then it must clearly and affirmatively appear that such power has by statute been conferred by the Florida Legislature on the several counties of Florida in connection with the construction of a system of State Roads in behalf of the public interest. We hesitate to hold that such power is conferred by implication.

Section 341.21, F.S.A., provides that the power of eminent domain is confirmed, vested and granted unto the State Road Department of Florida to condemn *all* necessary lands and property for the purpose of securing right of ways for State Roads and all bridges in connection therewith and said Department shall have due power to condemn any material and property necessary and useful for road building purposes . . . and the State Road Department is vested with power and authority to pay such judgment or compensation awarded in any such proceeding out of funds coming into the hands of said Department for State Road construction.

Section 341.22, F.S.A., authorizes the several conties of the State of Florida to furnish to the State Road Department the necessary right of ways for State Roads in or through their respective counties and to that end we are vested with the

power of eminent domain to condemn *all* necessary lands for the purpose of securing right of ways for said State Roads, and such condemnation proceedings shall be brought, maintained and prosecuted as prescribed and set out in Chapter 73 of the Statutes . . . the counties are authorized to enter into contracts to furnish right of ways to the State Road Department and to make bond to idemnify the State Road Department against expenses incurred by it in securing such right of ways . . . if the county fails to procure the same.

Section 341.23, F.S.A., authorizes counties to maintain condemnation proceedings to acquire lands for right of ways for State Roads as conferred in Section 341.22 supra, and may be exercised by the several counties of the State upon the request of the State Road Department and condemnation proceedings, where necessary, shall be brought and maintained in the name of said county; provided that nothing in Sections 341.21-341.23 supra shall empower *any* county to acquire by purchase, condemnation or otherwise *any lands* for right of ways for State Roads, except the same shall be first surveyed and located by the State Road Department in said county or counties . . . the counties may use any road funds coming into their hands for the purpose of acquiring by purchase or condemnation any such lands required for right of ways of State Roads. In light of the foregoing statutes, it is our conclusion that the County of Orange has full authority and statutory power to maintain the present suit.

Having concluded that the County of Orange has the authority and statutory power to maintain a suit in condemnation to acquire lands for State Road purposes, then an answer to the second division of our original question is necessary viz: may lands situated within the limits of a city necessary for a State Road be acquired in condemnation proceedings by a county? For an answer we again examine the pertinent Florida statutes throwing light upon the issue.

Section 341.47, F.S.A., provides, in part, that "the State Road Department may determine and fix the lines and locations of such roads between the cities and places thereon" and "the State Road Department shall have all the power and authority with respect to the roads therein named and

declared that it had on June 8, 1923, with respect to State Roads designated and established by said Department, provided the said Department shall not hereafter have the power to designate and establish State Roads . . . that the Road Department may survey and locate the lines or routes of any State Road *or section of any State Road* numbered and designated in the preceding section whenever in the judgment of said department the doing of such work shall be found to be practicable and to the *best interest* of the State." (Emphasis supplied).

Section 341.64, F.S.A., was enacted by the 1941 session of the Legislature as Chapter 20218, Laws of Florida. The title to the Chapter is viz, "An Act Relating to City and Town Streets and Roads or Portions thereof, Viaducts and Bridges, that Constitute the Route of Connection Between or Extension of State Road in the State Highway System; Declaring that such Serve *a State* purpose; Providing for Their Designation by the State Road Department; Authorizing and Requiring the State Road Department to Maintain and Repair Such Streets and Roads Under it Supervision and Control and to Construct and Reconstruct Such Streets and Roads Under Certain Conditions and Authorizing it (State Road Department) to Exercise Certain Powers With Respect to Same." (Emphasis supplied).

Section 341.64 supra provides:

"341.64. Certain Streets Designated as State Roads.— (1) It is hereby expressly recognized and declared by the legislature of the State of Florida that city and town streets and roads, or portions thereof, viaducts and bridges, that constitute the route of connection between or extension of state road in the state highway system, and referred to and named in and by this section as municipal connecting link roads, have served, do now serve and will in the future serve a state purpose, and are for the general benefit of the state; that it is a proper and legitimate state function and expense to designate such municipal connecting link roads and to undertake and provide the cost of maintenance, repair, construction and reconstruction of same.

"(2) The state road department, not later than October 1st, 1941, shall designate such streets, viaducts and bridges as are the municipal connecting link roads in each city and town,. and thereafter shall designate municipal connecting link roads for new or additional state roads in the state highway system at the time such state roads are opened for travel. The state road department shall keep a record of such municipal connecting link roads, so designated, and forthwith shall furnish to each city and town a statement of the municipal connecting link roads, so designated, in such city or town.

"(3) From and after October 1st, 1941, the state road department is authorized, empowered, directed and required to maintain and repair under its control and supervision, such designated municipal connecting link roads; to make appropriations and expenditures out of its funds for such purpose; and is authorized to enter into any and all contracts, inclusive of agreements with cities and towns, and with any federal agency of the United States of America authorized and empowered so to do, for such purpose. Provided nothing herein contained shall require the state road department to sweep, sprinkle or light said municipal connecting link roads.

"(4) That the state road department whenever it hereafter constructs or reconstructs any state road which enters or passes through any city or town, shall construct or reconstruct the municipal connecting link of such road to conform to the same type of construction used in such road . . . "

When the pertinent language of Section 341.47 supra viz: "the state road department may determine and fix the lines and location of such roads between cities and places therein" and "the state road department shall have all the power and authority with respect to the roads therein named and declared that it had on June 8, 1923, with respect to state roads designated and established by the said department, provided that such department shall not hereafter have the power to designate and establish state roads" and "provided further that the state road department may survey and *locate the line or route* of any state road *or section* of any state road numbered and designated in the preceding section, whenever

in the judgment of said department the doing of such work shall be found to be practicable and to the best interest of the State," is considered in connection with the several pertinent provisions of Chapter 20218, Acts of 1941, Laws of Florida (Section 341.64, F.S.A.) the conclusion is inescapable that the Legislature intended to have constructed within the limits of the municipalities of Florida connecting links of Florida State Roads so as to give the general public a system of good roads within the limits of municipalities the same as between the several cities.

The next argument presented is that under the guise of making a survey and locating the line or route of an established road the State Road Department has not the power to designate or establish an entirely new road. One of the answers to the argument is that the Legislature of Florida withdrew from the State Road Department many years ago the power "to designate and establish State Roads." Section 341.47, F.S.A. But the power to survey and locate the line or route of any State Road or section of any State Road previously designated and established was left to the sound judgment and discretion of the State Road Department. Section 341.47 supra. The general trend of the decisions of this Court sustains the conclusion that the relocation and construction of a section of a previously established temporary designated road is not the location and construction of an entirely new road by the Road Department within the meaning of the cited statutes. See Enzian v. State Road Department, 122 Fla. 527, 165 So. 695; Morrison v. Farnell, 126 Fla. 385, 171 So. 528; Sibley v. Volusia County, 147 Fla. 302, 2 So. (2nd) 578; Brower v. Putnam County, opinion filed January 9, 1948, and not yet reported.

The judgment appealed from is hereby reversed and a new trial awarded.

THOMAS, C. J., TERRELL and SEBRING, JJ., concur.